# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 21-1255V

| | |
|---|---|
| JANET M. ENGELS,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: May 8, 2025 |

*Robert Joel Krakow*, Law Office of Robert J. Krakow, P.C. New York, NY, for Petitioner.

*Alec Saxe*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT[1]

On April 20, 2021, Janet M. Engels filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") following a pneumococcal vaccine received on November 3, 2020. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find that Petitioner more likely than not suffered the residual effects of her alleged vaccine-related injury for more than six months, and

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

that she has satisfied all of the other requirements for a Table SIRVA claim. Therefore, Petitioner is entitled to compensation under the Vaccine Act.

## I.     Relevant Procedural History

On September 5, 2023, Respondent filed his Rule 4(c) Report opposing entitlement. *See* ECF No. 27. Respondent argues that "the evidence does not establish that Petitioner suffered the residual effects of her alleged injury for more than six months after the administration of the vaccine to satisfy the severity requirement under the Act." Rule 4(c) Report at 5. Petitioner subsequently filed a Motion for Ruling on the Record ("Mot.") on October 23, 2023. ECF No. 79. Respondent filed a response ("Resp.") on January 4, 2024 and Petitioner filed a reply ("Repl.") on February 12, 2024. ECF No. 93, 104. Petitioner filed a Supplemental Brief ("Supp. Br.") on May 10, 2024 and Respondent filed a response ("Supp. Resp.") on June 27, 2024. ECF No. 110, 113. Respondent "continues to maintain" that Petitioner has not satisfied the statutory severity requirement. Supp. Resp. at 1.

The matter is now ripe for adjudication.

## II.    Factual History

The parties agree that Petitioner had no history of left shoulder pain or dysfunction prior to vaccination. *See* Mot. at 9-12; Resp. at 2; Rule 4(c) Report at 2. Petitioner received a Prevnar 13 vaccine in her left arm at on November 3, 2020, at a pharmacy in New York. Ex. 5 at 2. Petitioner recalled that she "yelled in pain" and told the administrator to "get the needle out of [her] arm because something was wrong." Ex. 23 at ¶4. When her pain did not subside, Petitioner returned to the pharmacy and was encouraged to see her doctor. *Id*. at ¶6.

On December 1, 2020 (28 days after her vaccination), Petitioner called her primary care provider ("PCP") requesting an x-ray to determine whether the needle had broken or otherwise caused damage to her arm. Ex. 2 at 11. Due to Petitioner's report of severe pain, she was encouraged to seek urgent or emergency care. *Id*. at 10. Petitioner went to urgent care on December 9, 2020. Ex. 4 at 1-3. She reported pain and "trouble moving her arm" following her vaccination five weeks prior. *Id*. at 1. An x-ray of Petitioner's left humerus was normal. Ex. 8 at 12. She was prescribed naproxen for pain. *Id*. Ex. 4 at 3.

Petitioner called her PCP again on January 6, 2021, stating that she was "still in a lot of pain and she hasn't slept at all since she got the vaccine." Ex. 2 at 9. Her provider was out of the office, but Petitioner declined a telehealth appointment with another doctor that same day, noting that she would attempt to self-treat and would follow up in a week. *Id*. at 8. Petitioner also stated that it was difficult for her to come in for an appointment as

2

she was "the primary caregiver for her mother and can't leave her at this time." *Id*. Petitioner then attempted to seek care at an orthopedic clinic, but was unsuccessful. *Id*. at 6.

On January 19, 2021, Petitioner's left shoulder was evaluated by her PCP. Ex. 2 at 2. She reported that her vaccination had been "was really painful," and that her pain and decreased range of motion had persisted thereafter. *Id*. On exam, Petitioner's "range of motion was impaired," with "only about 30 degrees of abduction." *Id*. at 3. She was assessed with impingement syndrome and an MRI was ordered. *Id*. The MRI revealed mild AC joint osteoarthritis, mild bursitis, and distal supraspinatus tendinopathy. Ex. 3 at 2.

On February 23, 2021, Petitioner was evaluated by an orthopedist. Ex. 13 at 10. She reported left shoulder pain that "started after getting a pneumonia shot back on November 3, 2020." *Id*. On exam, Petitioner had full range of motion with pain, mild tenderness over the deltoid, and positive impingement testing. *Id*. She was diagnosed with tendinopathy of the left rotator cuff. *Id*. at 11. She was encouraged to use anti-inflammatory medications and referred to physical therapy. *Id*.

On April 19, 2021, Petitioner started physical therapy. Ex. 19 at 6. Petitioner reported "pain immediately upon entry" of the needle that had "not changed since then." *Id.* The evaluation revealed poor range of motion and strength, and poor functional use. *Id*. at 7. Treatment was planned for six weeks. *Id*. Petitioner returned for one additional physical therapy treatment on April 26, 2021. *Id*. at 8. At that session, she reported an increase in pain due to catching her mother during a fall. *Id*. During the session, Petitioner exhibited pain with extension and abduction exercises. *Id*. She stated that she did not continue with physical therapy because her shoulder felt worse after each session and she "couldn't afford to have worse shoulder pain because [her] main purpose at that time was to help [her] mother." Ex. 38 at ¶12.

Approximately nine months later, on February 15, 2022, Petitioner mentioned her left shoulder pain during a visit with her PCP. Ex. 32 at 28. She reported that her pain "continued" from when it had started at the time of her vaccination. *Id*. She stated that was "managing" and could raise her arm, but that the movement "causes discomfort." *Id*. She had decreased abduction on exam. *Id*. at 29. No diagnosis was made and no treatment was recommended. *Id*. at 29-30.

During the intervening period, Petitioner sought treatment for other medical issues, including: diverticulitis, which was treated with antibiotics (Ex. 42 at 53); "wavy vision" (Ex. 42 at 47); a refill of insomnia medication (Ex. 42 at 45); cardiac testing (Ex. 42 at 30-31); flu, Covid-19, and pneumococcal vaccinations (Ex. 35 at 15-16); and a colonoscopy (Ex. 45 at 23-24). None of the records of those medical contacts mention Petitioner's left shoulder pain.

Petitioner again sought treatment for left shoulder pain on March 20, 2024, and April 11, 2024. Ex. 50 at 8-9; Ex. 51 at 7. During the latter visit, she reported that the pain had been "present for 3 years and 6 months" and started after a pneumonia shot." Ex. 51 at 7. Petitioner was diagnosed with bursitis and prescribed Celebrex. *Id*. at 8.

### III.     Applicable Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove by a preponderance of the evidence the matters required in the petition by Vaccine Act Section 11(c)(1). The Vaccine Act also requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine Act §11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. §13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014).

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

4

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.   Findings of Fact - Severity

To satisfy the statutory severity requirement, Petitioner must demonstrate that her symptoms more likely than not continued until at least May 3, 2021 – six months after the onset of her pain on November 3, 2020. The record establishes (and the parties agree) that Petitioner continued treating her shoulder pain at least through her final physical therapy treatment on April 26, 2021 – just seven days prior to the six-month mark. Thereafter, Respondent contends, Petitioner "did not seek treatment for her left shoulder for nearly nine months," which "supports a finding that Petitioner's symptoms resolved prior to the six-month post-onset date." Resp. at 8. Respondent also argues that Petitioner had a history, both before and after her vaccination, of seeking regular medical care for various medical problems, including during the gap in treatment for her left shoulder pain. *Id.* at 9-12.

Despite the above, the overall record preponderantly supports the conclusion that Petitioner's symptoms more likely than not continued for at least seven days after her physical therapy appointment on April 26, 2021 – and therefore, that the statutory severity requirement has been met. During that last treatment event, Petitioner reported a worsening of her pain – up to 8-9/10 – after catching her elderly mother during a fall and the physical therapist noted that Petitioner exhibited pain during the exercises. Ex. 18 at 8. Further, treatment was ongoing and was planned to continue for several additional weeks. *Id.* And there is no evidence that petitioner had met any of her physical therapy goals at that time. *Id.*

Although Petitioner did not complete the planned therapy, she has provided a credible explanation for why she did not seek further treatment – that the sessions made her shoulder feel worse, and hindered her ability as sole caregiver for her elderly mother. Ex. 38 at ¶12. When Petitioner returned to treatment after a nine-month gap, she expressed that her pain had "continued" from the date of her vaccination, and that she continued to have decreased abduction on exam – which was present prior to the gap. Ex. 32 at 28. In fact, Petitioner continued to relate her left shoulder pain back to her vaccination as late as April 2024. *See* Ex. 51 at 7. Therefore, given that Petitioner expressed severe pain, exhibited pain with movement seven days prior to the six months, and consistently related her continuing pain thereafter to her vaccination, it is reasonable to conclude that her symptoms had not resolved as of the six-month onset "anniversary."

Further, the various medical visits cited by Respondent during the nine-month gap were not necessarily occasions on which Petitioner would have been expected to complain of her shoulder problem. During that time, for example, Petitioner saw her ophthalmologist for "wavy vision," her cardiologist for cardiac testing, and had a colonoscopy. *See* Ex. 42 at 23-24, 30-31, 47. None of these specialists would reasonably be expected to treat shoulder pain. Otherwise, Petitioner only had brief medical contacts for one medication refill and three preventative vaccinations, and for an acute diverticulitis that required antibiotics. Ex. 35 at 15-16; Ex. 42 at 53, 72.

Thus, after consideration of the entire record, I find that the evidence preponderates in Petitioner's favor on the issue of severity. Of course, the substantial gaps in treatment, coupled with the mild nature of the treatments received, will bear on any pain and suffering award – and Petitioner should keep this in mind when making any demand.

### V. Ruling on Entitlement

#### A. *Requirements for Table SIRVA*

I have found that Petitioner has preponderantly established that her pain began within 48 hours after her vaccination. 42 C.F.R. § 100.3(c)(10)(ii). Respondent concedes that Petitioner otherwise "has satisfied the Table criteria for a left-sided SIRVA." Resp. at 7; *See* 42 C.F.R. § 100.3(c)(10)(i), (iv). Therefore, I find that Petitioner has provided preponderant evidence to establish that she suffered a Table SIRVA injury.

#### B. *Additional Requirements for Entitlement*

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The vaccine record shows that Petitioner received a Prevnar 13 vaccine in her left arm on November 3, 2020 at a pharmacy in New York. Ex. 5 at 2; Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Additionally, Petitioner has stated that she has not filed any civil action or received any compensation for her vaccine-related injury, and there is no evidence to the contrary. Ex. 23 at ¶12; Section 11(c)(1)(E) (lack of prior civil award). And as noted above, I have found that severity has been established. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Therefore, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

### Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master
